Case No. 16-17216

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

Bobby S. Dutta, on behalf of himself and all others similarly situated,

*Plaintiff-Appellant*,

v.

State Farm Mutual Automobile Insurance Company,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of California
Case No. 3:14-cv-04292-CRB

## REPLY BRIEF OF PLAINTIFF-APPELLANT BOBBY S. DUTTA

James A. Francis
David A. Searles
John Soumilas
Jordan M. Sartell
**FRANCIS & MAILMAN, P.C.**
Land Title Building
100 S. Broad Street, Suite 1902
Philadelphia, PA 19110
Tel: (215) 735-8600
Fax: (215) 940-8000
jfrancis@consumerlawfirm.com
dsearles@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
jsartell@consumerlawfirm.com

Deborah L. Raymond
**LAW OFFICES OF DEBORAH L. RAYMOND**
445 Marine View Ave., Suite 120
Del Mar, CA 92014
Tel: (858) 481-9559
draymondlaw@gmail.com

Robert S. Sola
**ROBERT S. SOLA, P.C.**
1500 SW First Avenue, Suite 800
Portland, OR 97225
Tel: (503) 295-6880
rssola@msn.com

Micah S. Adkins
**THE ADKINS FIRM, P.C.**
2 Perimeter Park South, Suite 405E
Birmingham, AL 35243
Tel: (205) 206-6718
MicahAdkins@ItsYourCreditReport.com

*Attorneys for Plaintiff-Appellant*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................ ii

I. INTRODUCTION ............................................................1

II. ARGUMENT....................................................................2

    A. There Are Genuine Issues Of Material Fact As To The Accuracy Of Mr. Dutta's Background Check And The Cause Of His Job Denial That Preclude Summary Judgment............................................2

    B. Mr. Dutta's Interpretation Comports with *Spokeo*...............................4

        1. Inaccuracy Is Not a Prerequisite for Article III Standing Under FCRA Section 1681b(b)(3)...............................6

            a. The majority of district courts support Plaintiff's interpretation that inaccuracy is not required.................11

            b. The FTC supports Mr. Dutta's reading ..........................15

        2. Delay of FCRA Mandated Consumer Report Information is Identical to Denial for Informational Injury Purposes..........17

        3. In Addition to Providing a Right to Information, FCRA Section 1681b(b)(3) Also Provides a Privacy Right, the Violation of Which Alone Confers Standing............................21

        4. State Farm's Reliance on *Dreher* is Misplaced .......................22

        5. At a Minimum, State Farm's Failure to Provide Mr. Dutta a Copy of His Consumer Report and FCRA Mandated Information Increased the Risk That He Would be Denied the Job ............................................................24

    C. Even If The District Court's Consideration Of The Beasley Declaration Was Procedurally Proper, It Erred In Finding That It Was Dispositive Of Mr. Dutta's Standing ..........................................25

III. CONCLUSION.................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bank of America Corp. v. City of Miami, Florida,*
2017 WL 1540509 (May 1, 2017) .......................................................5

*Banks v. Central Refrigerated Services, Inc.,*
2017 WL 1683056 (D. Utah May 2, 2017) ......................................13

*Benson v. Wells Fargo Bank, NA,*
2017 WL 2772119 (D.S.D. June 26, 2017) ................................14, 15

*Boergert v. Kelly Servs., Inc.,*
2017 WL 440272 (W.D. Mo. Feb. 1, 2017) .....................................15

*Boorstein v. Men's Journal LLC,*
2012 WL 2152815 (C.D. Cal. June 14, 2012) ..................................20

*Braitberg v. Charter Commc'ns, Inc.,*
836 F.3d 925 (8th Cir. 2016) ...........................................................15

*Camacho v. Bridgeport Fin. Inc.,*
430 F.3d 1078 (9th Cir. 2005) .........................................................18

*Campbell v. Adecco USA, Inc.,*
2017 WL 1476152 (W.D. Mo. Apr. 24, 2017)..................................15

*Church v. Accretive Health, Inc.,*
654 Fed. App'x. 990 (11th Cir. 2016) ..............................................18

*Dalton v. Capital Assoc. Indus., Inc.,*
257 F.3d 409, 414 (4th Cir. 2002) .....................................................7

*Demmings v. KKW Trucking, Inc.,*
2017 WL 1170856 (D. Or. Mar. 29, 2017).................................12, 13

*Dreher v. Experian Information Solutions, Inc.*
856 F.3d 337 (4th Cir. 2017) ...............................................22, 23, 24

*Goode v. LexisNexis Risk & Info. Analytics Group, Inc.*,
  848 F. Supp. 2d 532 (E.D. Pa. 2012)........................................................9

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982)..............................................................................18

*Haykuhi Avetisyan v. Experian Info. Sols., Inc.*,
  2016 WL 7638189 (C.D. Cal. June 3, 2016).........................................10

*In re Horizon Healthcare Servs. Inc. Data Breach Litig.*,
  846 F.3d 625 (3d Cir. 2017) ...................................................................4

*Larson v. Trans Union, LLC*,
  201 F. Supp. 3d 1103 (N.D. Cal. 2016)..................................................10

*Lee v. Hertz Corp.*,
  2016 WL 7034060 (N.D. Ca. Dec. 2, 2016)...........................................15

*In re Michaels Stores, Inc., Fair Credit Reporting Act (FCRA) Litig.*,
  2017 WL 354023 (D.N.J. Jan. 24, 2017).................................................11

*Moody v. Ascenda USA Inc.*,
  2016 WL 4702681 (S.D. Fla. July 1, 2016) ...........................................12

*Mix v. Asurion Ins. Servs., Inc.*,
  2016 WL 7229140 (D. Ariz. Dec. 14, 2016)......................................11, 12

*In re Nickelodeon Consumer Privacy Litig.*,
  827 F.3d 262 (3d Cir. 2016) ....................................................................5

*Pintos v. Pac. Creditors Ass'n*,
  605 F.3d 665 (9th Cir. 2010) .................................................................10

*Public Citizen v. U.S. Dep't of Justice*,
  491 U.S. 440 (1989)................................................................................20

*Seamans v. Temple Univ.*,
  744 F.3d 853 (3d Cir. 2014) ..................................................................10

*Soutter v. Equifax Info. Servs., LLC*,
  307 F.R.D. 183 (E.D. Va. 2015)..............................................................10

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016)..................................................................*passim*

*Syed v. M-I, LLC*,
  853 F.3d 492 (9th Cir. 2017) ...........................................4, 11, 21, 22

*Thomas v. FTS USA, LLC*,
  193 F. Supp. 3d 623 (E.D. Va. 2016) .........................................11, 12

*Tyus v. United States Postal Serv.*,
  2017 WL 2656181 (E.D. Wis. June 20, 2017) ....................................6

## <u>STATUTES</u>

Cable Communications Policy Act.........................................................15

Dodd-Frank Act ...................................................................................15

Fair and Accurate Credit Transaction Act ............................................15

Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x, *et seq.*.........................*passim*

  15 U.S.C. § 1681b(b)(2) .........................................................11, 21

  15 U.S.C. § 1681b(b)(2)(A)...........................................................21

  15 U.S.C. § 1681b(b)(3) ........................................................*passim*

  15 U.S.C. § 1681b(b)(3)(B).............................................................13

  15 U.S.C. § 1681b(c) .....................................................................10

  15 U.S.C. § 1681c..........................................................................10

  15 U.S.C. § 1681c-2 .......................................................................10

  15 U.S.C. § 1681e(b) ......................................................................10

  15 U.S.C. § 1681g(a) ......................................................................10

  15 U.S.C. § 1681g(a)(2) ..................................................................22

  15 U.S.C. § 1681j ...........................................................................10

  15 U.S.C. § 1681j(a) .......................................................................10

15 U.S.C. § 1681s(a)(1) ................................................................. 16

Fair Debt Collection Practices Act, 15 U.S.C. § 1692g(a) ..................................... 10

Fair Housing Act ....................................................................... 18, 19

## Oᴛʜᴇʀ Aᴜᴛʜᴏʀɪᴛɪᴇs

Fᴇᴅᴇʀᴀʟ Tʀᴀᴅᴇ Cᴏᴍᴍɪssɪᴏɴ, 40 Yᴇᴀʀs ᴏꜰ Exᴘᴇʀɪᴇɴᴄᴇ ᴡɪᴛʜ ᴛʜᴇ Fᴀɪʀ
    Cʀᴇᴅɪᴛ Rᴇᴘᴏʀᴛɪɴɢ Aᴄᴛ: Aɴ FTC Sᴛᴀꜰꜰ Rᴇᴘᴏʀᴛ ᴡɪᴛʜ Sᴜᴍᴍᴀʀʏ ᴏꜰ
    Iɴᴛᴇʀᴘʀᴇᴛᴀᴛɪᴏɴs 1 (2011) *available at*
    https://www.ftc.gov/sites/default/files/ documents/reports/40-years-
    experience-fair-credit-reporting-act-ftc-staff-report-summary-
    interpretations/110720fcrareport.pdf (last visited July 20, 2017) ..................... 16

Fᴇᴅᴇʀᴀʟ Tʀᴀᴅᴇ Cᴏᴍᴍɪssɪᴏɴ, Letter from William Haynes, Attorney,
    Div. of Credit Practices, Fed. Trade Comm'n, to A. Michael Rosen,
    Background America, Inc., available at
    https://www.ftc.gov/policy/advisory-opinions/advisory-opinion-rosen-
    06-09-98 (last accessed July 19, 2017) ........................................ 15-16

Fᴇᴅᴇʀᴀʟ Tʀᴀᴅᴇ Cᴏᴍᴍɪssɪᴏɴ, Letter from William Haynes, Attorney,
    Div. of Credit Practices, Fed. Trade Comm'n, to Harold Hawkey,
    Employers Assoc. of N.J., available at
    https://www.ftc.gov/policy/advisory-opinions/advisory-opinion-
    hawkey-12-18-97 ................................................................. 16

H.R. Rep. No. 103-486, 103d Cong., 2d Sess. (1994) ................................... 8

S. Rep. No. 517, 91st Cong., 1st Sess. (1969) ......................................... 7

116 Cong. Rec. 36570 (1970) ......................................................... 7

## Cᴏɴsᴛɪᴛᴜᴛɪᴏɴᴀʟ Pʀᴏᴠɪsɪᴏɴs

Article III ..................................................................... *passim*

## I.    <u>INTRODUCTION</u>

While presented in various iterations, State Farm's Brief advances several key flawed arguments.  First, State Farm repeatedly overlooks the genuine issues of disputed material facts surrounding Mr. Dutta's job denial.  Though State Farm would like the factual record to present a clean and neat demonstration that Mr. Dutta had no chance of ever getting a job due to accurate information on his credit report, it does not.  The actual record presents something entirely different, and the reasons for his job rejection are patently disputed.

As importantly, and regardless of the disputed factual record, State Farm's analysis regarding the elements of Article III standing for FCRA section 1681b(b)(3) claims is mired in several erroneous premises that neither the U.S. Supreme Court nor the majority of appellate and district courts interpreting FCRA claims post-*Spokeo* have accepted.  Specifically, and contrary to the District Court's ruling, the FCRA does not require proof of an inaccuracy in order for a consumer to have standing to bring a claim under FCRA section 1681b(b)(3).  In addition, State Farm identifies no sound basis for the District Court's distinction between a delay of statutorily-mandated information and a denial of that information when it comes to the type of informational injury recognized by Supreme Court precedent.  For the job applicant, not having his or her consumer report before a job decision is made *is* a denial of information under section 1681b(b)(3) because job decisions are made

based upon the report; providing the information to job applicants after they have lost the job is virtually pointless.

Ultimately, the net effect of these flawed premises is that State Farm, like the District Court, conflates Article III injury with actual damages under the FCRA, two entirely distinct legal concepts. As such, the District Court improperly granted summary judgment, and this Court should find that Mr. Dutta has standing and should remand this case for further proceedings and discovery.

## II. <u>ARGUMENT</u>

### A. There Are Genuine Issues Of Material Fact As To The Accuracy Of Mr. Dutta's Background Check And The Cause Of His Job Denial That <u>Preclude Summary Judgment</u>

Contrary to State Farm's contentions, the District Court made two critical erroneous findings in the face of squarely disputed issues of fact. First, the District found that the background check State Farm obtained about Mr. Dutta was "entirely accurate." EOR 006. Second the District Court found that any dispute made by Mr. Dutta after receiving his background check was "doomed." *Id.* Neither finding was supported by the record, and in fact, directly belied by the evidence.

First, there was clear evidence that Mr. Dutta's report did contain inaccurate information. In his declaration, Mr. Dutta stated the BIG report obtained by State Farm contained "inaccurate and misleading information about me." EOR 91-92 at ¶ 4. Moreover, Mr. Dutta's declaration and email to State Farm demonstrated that

these inaccuracies or "mistakes" included accounts with Bank of America ("BOA") and Chase, and that State Farm had told him (*i.e.*, admission of a party-opponent) that he lost the job *because those accounts* were being inaccurately reported within State Farm's 24-month lookback period. EOR 98-99 ("*since these negative trade items were within State Farms' [sic] 24-months [sic] look back period, State Farms [sic] declined to hire me for the job.* You told me that the report is being mailed out to me for my records.")(emphasis supplied); *see also* EOR 91 at ¶ 5. In addition, Mr. Dutta's declaration asserts he was informed that the decision was communicated as "final" by Roberta Thomas on March 11, 2014. Thus, there was clear evidence of record that the actual reason Mr. Dutta was denied the job by State Farm was because of the inaccuracies related to late payments being reported on the BOA and Chase accounts, and that the decision was final before he was ever provided with a copy of his report.

State Farm attempts to discredit Mr. Dutta's evidence by relying upon the Beasley declaration asserting that the information he disputed was accurate, and offering after-the-fact speculation that he would have been denied the job anyway based upon other information in his report, but that only solidifies that the circumstances surrounding Mr. Dutta' job application are factually disputed. Brief of Appellee at 29-30. The fact remains that the only evidence regarding the actual reasons Mr. Dutta was denied his job that were provided *at the time* of the denial is

his email communication with State Farm regarding the Chase and BOA accounts, and his testimony. Moreover, State Farm did not present any evidence that it actually responded to Mr. Dutta's disputes before removing him from the ACT Program.

This timeline further establishes State Farm's failure to comply with FCRA section 1681b(b)(3) – a point it does not contest in its brief – namely that it did not, *prior* to taking adverse action, provide Mr. Dutta with a copy of the consumer report upon which it relied and a copy of a description of Mr. Dutta's FCRA rights. This failure satisfies the concrete injury requirement for Article III standing, especially as clarified by this Court in *Syed v. M-I, LLC*, 853 F.3d 492, 499 (9th Cir. 2017), when it interpreted a related subsection of the FCRA (Article III standing was established when a job applicant was deprived of the ability to meaningfully authorize a background check under the FCRA).[1]

**B.     Mr. Dutta's Interpretation Comports with *Spokeo***

State Farm asserts that Mr. Dutta erroneously reads *Spokeo* based upon his contention Spokeo did not change long-standing precedent relating to Article III standing, but his reading has circuit support. *See In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 637-38 (3d Cir. 2017) ("*Spokeo* itself does not state that it is redefining the injury-in-fact requirement. Instead, it reemphasizes that Congress 'has the power to define injuries' 'that were previously inadequate in

---

[1]     *See also* Plaintiff-Appellant's Brief at 14-17.

law.'"); *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 273 (3d Cir. 2016) (reaffirming that "the actual or threatened injury required by Article III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.").

Moreover, the Supreme Court recently affirmed traditional constitutional standing requirements in *Bank of America Corp. v. City of Miami, Florida*, No. 15-1111, 2017 WL 1540509, at *5 (May 1, 2017) ("The question is whether the statute grants the plaintiff the cause of action that he asserts. In answering, we presume that a statute ordinarily provides a cause of action 'only to plaintiffs whose interests fall within the zone of interests protected by the law invoked.'"), quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc*., 134 S. Ct. 1377, 1382 (2014) (internal quotation marks omitted).

Mr. Dutta's interest in being advised of State Farm's intention to take adverse action prior to the action being taken certainly falls within the zone protected by FCRA section 1681b(b)(3).

Similarly, a consumer is not required to demonstrate tangible harm. State Farm overstates the threshold Mr. Dutta faces to establish standing. First, although tangible injuries are "perhaps easier to recognize," "intangible injuries can nevertheless be concrete," as can injuries based on "risk of harm." *Spokeo*, 136 S.

Ct. at 1549.[2] "'Concrete' is not, however, necessarily synonymous with 'tangible.' Although tangible injuries are perhaps easier to recognize, [the Supreme Court has] confirmed in many … previous cases that intangible injuries can nevertheless be concrete." *Id*. at 1549 (quoting *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009)).

Thus, the only misreading of *Spokeo* is that made by State Farm.

## 1. Inaccuracy Is Not a Prerequisite for Article III Standing Under FCRA Section 1681b(b)(3)

Picking up on one of the concerning ramifications of the District Court's decision, State Farm argues that in order for a plaintiff to have standing to assert a section 1681b(b)(3) claim, he must have been the subject of an inaccurate consumer report. However, the statutory framework of the FCRA provides otherwise.

The FCRA's statutory text and legislative history make clear that section 1681b(b)(3) creates rights to information for jobseekers, and if deprived of those rights, jobseekers have standing to seek redress for that deprivation in the federal courts. Mr. Dutta has more than cleared that hurdle.

The FCRA permits the use of consumer reports by employers "to use the information for employment purposes." 15 U.S.C. § 1681b(a)(3)(B). However, such

---

[2]     *See Tyus v. United States Postal Serv.*, No. 15-cv-1467, 2017 WL 2656181, at *7 (E.D. Wis. June 20, 2017) (Section 1681b(b)(3) plaintiff who alleged loss of opportunity to address background report error had standing based upon increased risk of real harm.)

usage is not unrestricted. When debating the initial passage of the FCRA, "Congress found that in too many instances agencies were reporting inaccurate information that was adversely affecting the ability of individuals to obtain employment." *Dalton v. Capital Assoc. Indus., Inc.*, 257 F.3d 409, 414 (4th Cir. 2002).[3] Before the passage of the 1994 amendments to the FCRA that created the duties at issue in this matter, Congress again weighed in on the importance of protections for jobseekers, seeking "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information," and "to prevent an undue invasion of the individual's right of privacy in the collection and dissemination of credit information." S. Rep. No. 517, 91st Cong., 1st Sess. at 2 (1969).

Contrary to the District Court's ruling, inaccurate information was not the only harm Congress sought to ameliorate with the passage of the FCRA. It also specifically recognized that "[o]ne problem which the hearings … identified is the inability at times of the consumer to know he is being damaged by an adverse credit report." *Id*. at 3. "Unless a person knows he is being rejected for credit or insurance or employment because of a credit report, he has no opportunity to be confronted

---

[3]    The *Dalton* court quoted Representative Sullivan at length, who remarked, "with the trend toward … the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal 'blips' and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable." 116 Cong. Rec. 36570 (1970).

with the charges against him and tell his side of the story." *Id.* Congress emphasized that "the consumer has *a right to know* when he is being turned down for credit, insurance, or employment because of adverse information in a credit report and to correct any erroneous information in his credit file." *Id.* at 2 (emphasis added). Therefore, Congress wished to "establish the right of a consumer to be informed of investigations into his personal life" and to "be told the name of the agency making the report" whenever the individual "is rejected for credit, insurance or employment because of an adverse credit report[.]" *Id.* at 1.

The House Committee described the steps the amendment would take to address these issues:

> The bill also triggers special provisions when an employer contemplates taking adverse action based in whole or in part on a consumer report. Specifically, before taking adverse action regarding the consumer's current or prospective employment, an employer must provide to the consumer a copy of the report and a written description of the consumer's rights under the FCRA. The employer must also provide the consumer with a reasonable period to respond to any information in the report that the consumer disputes and with written notice of the opportunity and time period to respond. A reasonable period for the employee to respond to disputed information is not required to exceed 5 business days following the consumer's receipt of the consumer report from the employer.

H.R. Rep. No. 103-486, 103d Cong., 2d Sess. 30 (1994).

Ultimately, Congress distilled its concerns into section 1681b(b)(3) requirements:

> [I]n using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates-
>
> (i)     a copy of the report; and
>
> (ii)    a description in writing of the rights of the consumer under this subchapter, as prescribed by the Bureau under section 1681g(c)(3) of this title.

15 U.S.C. §1681b(b)(3)(A). This section's "'clear purpose' … is to afford employees time to 'discuss reports with employers or otherwise respond before adverse action is taken.'" *Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 848 F. Supp. 2d 532, 537 (E.D. Pa. 2012) (quoting Lynne B. Barr, *The New FCRA: An Assessment of the First Year*, 54 Bus. Law. 1343, 1348 (1999)). Nowhere in the language of the statute is any description of the information contained in the report or reference to its accuracy, but rather the operative language pertains to the user's reliance upon the report, "in whole or in part." 15 U.S.C. § 1681b(b)(3)(A). Congress could have limited the scope of the protections offered in section 1681b(b)(3) to inaccurate data, but it did not.

Inaccuracy is not, and cannot logically be, a prerequisite for standing in the context of a section 1681b(b)(3) claim. Some FCRA claims logically involve harm

resulting from inaccuracy in a consumer report.[4] But others do not and cannot logically be predicated upon the presence of inaccurate information in a consumer report because they address something more fundamental about the nature of consumer reporting itself and the use of consumer reports in different contexts.[5] Indeed, one of the most popularly recognized and utilized rights in the FCRA is the consumer's right to obtain a copy of his or her credit report, for free on an annual basis or for a fee otherwise. 15 U.S.C. § 1681j. According to the District Court's analysis, if a consumer credit reporting agency failed to provide a consumer with a credit report, the consumer would not have standing to seek redress of the denial of this right absent an inaccuracy in the credit report. As explained below, this is not the case.

---

[4]    Examples include section 1681e(b) claims arising from errors that result from a consumer reporting agency's use of unreasonable procedures that do not ensure maximum possible accuracy of a consumer report, *see, e.g.*, *Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183, 192-93 (E.D. Va. 2015). Other examples include claims pursuant to section 1681c-2 arising from a consumer reporting agency's duty to respond to a consumer's report of identity theft, *see, e.g.*, *Haykuhi Avetisyan v. Experian Info. Sols., Inc.*, 2016 WL 7638189, at *13 (C.D. Cal. June 3, 2016).

[5]    Examples of these sorts of claims include those pursuant to section 1681b(c) arising from the unauthorized usage of a consumer report, *see, e.g.*, *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665 (9th Cir. 2010); section 1681c arising from the inclusion of outdated information in a consumer report, *see, e.g.*, *Seamans v. Temple Univ.*, 744 F.3d 853, 861 (3d Cir. 2014); and, claims pursuant to sections 1681g(a), 1681j(a), or (f) arising from a consumer reporting agency's failure to provide complete and accurate statutorily-mandated disclosures to consumers, *see, e.g.*, *Larson v. Trans Union, LLC*, 201 F. Supp. 3d 1103, 1106 (N.D. Cal. 2016).

### a. The majority of district courts support Plaintiff's interpretation that inaccuracy is not required

Because of the problems inherent in predicating standing upon the accuracy of a consumer report in the section 1681b(b)(3) context, the majority of district courts addressing the issue of standing in cases like Mr. Dutta's have found standing regarding of whether the consumer report at issue contained an inaccuracy.[6]

Building upon the "broad principle" of *Thomas*, the court in *Mix v. Asurion Insurance Services, Inc*. noted that the *Spokeo* inquiry "is not limited to situations where the violation of those rights results in the dissemination of false information. The proper inquiry is whether a procedural violation creates a 'risk of real harm.'" *Mix v. Asurion Ins. Servs. Inc.*, No. CV-14-02357-PHX-GMS, 2016 WL 7229140, at *5 (D. Ariz. Dec. 14, 2016) (citing *Spokeo*, 136 S. Ct. at 1549-50). The court also noted that "in the context of employment-related background checks, information that is true but amenable to contextual explanation, delivered without time to provide that explanation, does create a risk of real harm." *Id*. Finding that the plaintiff,

---

[6] *See* Plaintiff-Appellant's Brief at 10 for discussion of *Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623 (E.D. Va. 2016). State Farm contends that this Court should not be persuaded by *Thomas* in light of *In re Michaels Stores, Inc., Fair Credit Reporting Act (FCRA) Litig.*, No. 2615, 2017 WL 354023 (D.N.J. Jan. 24, 2017). However, *Michaels Stores* is not only not binding on this Court, it is distinguishable because it only addressed with an employer's duties under section 1681b(b)(2). Moreover, this Court impliedly rejected the basis for the *Michaels Stores* decision in *Syed*, *supra* (holding that a plaintiff alleging a violation of section 1681b(b)(2) had standing to sue under Article III).

11

whose background check did not contain inaccurate information, nevertheless had standing to sue pursuant to section 1681b(b)(3), the court distinguished between the harm caused between losing a job and being denied FCRA-mandated information. *Id*. at *6. ("'It does not matter *why* [defendant] chose to reject [plaintiff's] application. [Plaintiff] is not suing [defendant] because it did not hire her. She is suing it because it took adverse action against her without providing her notice and an opportunity to explain her side of the story.' This is sufficient to allege an informational injury to support standing[.]") (citations omitted). *Id*.; *see also, Moody v. Ascenda USA Inc.*, No. 16-CV-60364-WPD, 2016 WL 4702681, at *5 (S.D. Fla. July 1, 2016) (finding that plaintiff had standing to bring section 1681b(b)(3) claim based upon allegations that defendant had not provided a copy of the pertinent consumer report and a reasonable opportunity to respond to the information in the report before taking adverse employment action).

Like the plaintiffs in *Thomas* and *Mix*, State Farm denied Mr. Dutta a copy of the consumer report that served as the basis for its dismissal, an opportunity to learn about his rights under the FCRA, and a chance to explain his side of the story, *before* the "final" decision on March 11.

In *Demmings v. KKW Trucking, Inc.*, the court rejected the notion that the FCRA only exists "to allow prospective employees to correct inaccurate information in their consumer reports," and recognized that information deprivation creates "at

minimum, a risk of concrete, informational harm, even when all of the information in his or her consumer report is accurate." 2017 WL 1170856 at *9 (D. Or. Mar. 29, 2017).[7] Congress "did not … condition the protections in the FCRA on the accuracy or inaccuracy of the information contained in the consumer report." *Id*. The court "envision[ed] numerous reasons why such protections were put in place, regardless of accuracy" including alerting the consumer to take steps to improve his or her report in anticipation of a future job application or to make educated decisions concerning travelling for interviews. *Id*. Denial of those opportunities were, for the *Demmings* court, part and parcel of the informational harm Congress sought to help jobseekers avoid by enacting this section of the FCRA. *Id*. The court also noted that *Spokeo*'s "cautionary example that a consumer's information may be 'entirely accurate' was not referencing an employer's duty to give § 1681b(b)(3)(B) notice to an unsuccessful applicant," but rather "addressed … a hypothetical consumer reporting agency's failure 'to provide the required notice to a user of the agency's consumer information.'" *Id*., citing *Spokeo*, 136 S. Ct. at 1553-54.

In *Banks v. Central Refrigerated Services, Inc.*, the court affirmed Article III standing of a section 1681b(b)(3)(B) plaintiff. No. 16 Civ. 356, 2017 WL 1683056,

---

[7]    The *Demmings* court's analysis included a reference to the District Court's decision below, but clearly did not agree with its decision. On the contrary, the *Demmings* court embraced the broad, remedial scope of the FCRA's jobseeker protections.

at *4 (D. Utah May 2, 2017). "Congress created at least two substantive rights on behalf of applicable consumers who suffered an adverse employment action based in whole or in part on a consumer report: a right to information and a right to correct inaccurate information." *Id*. at *3.

The District Court neglected Mr. Dutta's first right, the right to information, in its narrow focus on the second, the right to correct inaccurate information. The FCRA only functions properly when both rights are preserved. Without the information provided *before* an adverse action is taken by a prospective employer, a jobseeker's rights to correct inaccuracies are meaningless as the employer has more than likely filled the open position with another candidate.

In *Benson v. Wells Fargo Bank, NA*, the court recognized "the crux of the injury here is not whether the information is accurate, it is defendant depriving plaintiff of his right to information …." No. CIV 16-5061-JLV, 2017 WL 2772119, at *7 (D.S.D. June 26, 2017). *Benson* is the latest in the growing line of section 1681b(b)(3) cases that have found standing.

District courts that have held a plaintiff did not have standing to sue under section 1681b(b)(3) have followed the flawed line of reasoning that the FCRA only protects consumers from the pernicious effects of inaccurate information in their

14

background reports.[8]  As noted above, this logic is flawed because of the irrelevance of accuracy to an employer's duties under section 1681b(b)(3).  Moreover, many of those cases rely on appellate decisions pertaining to cases brought under the Cable Communications Policy Act ("CCPA")[9] or the Fair and Accurate Credit Transaction Act credit card information truncation amendments.

###    b.    The FTC supports Mr. Dutta's reading

The Federal Trade Commission ("FTC"), which is the regulatory agency responsible for enforcing the FCRA prior to the passage of the Dodd-Frank Act in 2010, also supports Mr. Dutta's view of section 1681b(b)(3). It has stated:

> Section [1681b](b) requires that all employers who use consumer reports provide a copy of the report to the affected consumer before any adverse action is taken. Employers must comply with this provision even where the information contained in the report (such as a criminal record) would automatically disqualify the individual from

---

[8]    *See, e.g.*, *Lee v. Hertz Corp.*, No. 15-cv-04562, 2016 WL 7034060, at *6 (N.D. Ca. Dec. 2, 2016).  State Farm's citation to *Lee v. Hertz* is unavailing because of that court's reliance the decision of the District Court below.

[9]    *See, e.g.*, *Boergert*, 2017 WL 440272, at *3-4; *Campbell v. Adecco USA, Inc.*, No. 2:16-cv-04059, 2017 WL 1476152, at *3 (W.D. Mo. Apr. 24, 2017).  These cases stem from *Braitberg v. Charter Commc'ns, Inc.*, 836 F.3d 925, 930 (8th Cir. 2016).  *Benson* thoroughly distinguished: "*Braitberg* deals with the [Cable Communications Policy Act], not the FCRA.  The court grounds its conclusion regarding the substantive rights the FCRA confers in the statute's backdrop and text, so *Braitberg's* holding does not directly apply to this case.  Third, *Braitberg* involves the retention of information lawfully obtained. The core of this case is plaintiff's information was obtained in violation of informational and privacy rights granted by the FCRA. The retention of information in *Braitberg* was an extension of the *status quo*, and the acquisition of information in this case was a disruption of a *status quo* where plaintiff's FCRA protections were intact."  *Benson*, 2017 WL 2772119, at *8.

> employment or lead to an adverse employment action. Indeed, this is precisely the situation where it is important that the consumer be informed of the negative information in case the report is inaccurate or incomplete. If the report is in error, the employer may reconsider his or her tentative decision to take adverse action.

Letter from William Haynes, Attorney, Div. of Credit Practices, Fed. Trade Comm'n, to A. Michael Rosen, Background America, Inc., available at https://www.ftc.gov/policy/advisory-opinions/advisory-opinion-rosen-06-09-98 (last accessed July 19, 2017). Additionally, FCRA section 1681b(b)(3) mandates disclosure of the Bureau-prescribed description of rights, important educational materials without which consumers may never know the rights Congress provided them. *See* Letter from William Haynes, Attorney, Div. of Credit Practices, Fed. Trade Comm'n, to Harold Hawkey, Employers Assoc. of N.J., available at https://www.ftc.gov/policy/advisory-opinions/advisory-opinion-hawkey-12-18-97 (last accessed July 20, 2017). Not only do courts often receive the guidance of the FTC as persuasive authority, the FTC has enforcement and interpretive authority under the FCRA and has provided guidance for over 40 years. *See* 15 U.S.C. § 1681s(a)(1); FEDERAL TRADE COMMISSION, 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT: AN FTC STAFF REPORT WITH SUMMARY OF INTERPRETATIONS 1, (2011) *available at* https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-

summary-interpretations/110720fcrareport.pdf (last visited July 20, 2017) (emphasis added, footnotes removed).

**2. Delay of FCRA Mandated Consumer Report Information is Identical to Denial for Informational Injury Purposes**

Though it recognized the long-standing principle reaffirmed by *Spokeo* that the deprivation of statutorily required information can present concrete informational injury for Article III standing, the District Court nevertheless ruled that Mr. Dutta lacked standing because State Farm's failure was just a delay of "three days later" rather than "an actual denial." EOR 005. Given the FCRA's specific requirement that job applicants be provided with their backgrounds check at least five business days *before* an employer takes adverse action, the Court's finding amounted to a distinction without a difference, and was a pivotal error in its standing analysis. As far as FCRA section 1681b(b)(3) is concerned, delay of consumer report information until after job denial *is* denial of the information.

The FCRA is clear: users of consumer reports for employment purposes must provide the copy of the jobseeker's report and a description of his or her FCRA rights "*before* taking any adverse action based in whole or in part on the report[.]" 15 U.S.C. § 1681b(b)(3). Thus, the important omission on the employer's part is not the failure to provide copies of the required documents in general, but the failure to provide them in a particular time frame, namely before taking adverse action.

Contrary to State Farm's characterization, *Church v. Accretive Health, Inc.*, 654 Fed. App'x. 990 (11th Cir. 2016), is helpful because it identifies that timing requirements may provide substantive rights, not merely procedural protections. In *Church*, the plaintiff alleged that the defendant debt collector violated the FDCPA by not including in its collection letter certain required disclosures. *Id.* at 991. The FDCPA mandates these disclosures "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt" unless "the … information is contained in the initial communication …." 15 U.S.C. § 1692g(a).[10]

Mr. Dutta's rights under section 1681b(b)(3) have a similar temporal substantive importance. Like the *Church* plaintiff's right to information in a prescribed prior to subsequent debt collection activities, Mr. Dutta was entitled to information *prior* to State Farm's taking adverse action against him.

The Supreme Court's decision in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) also demonstrates that standing is met here, even though it is not an FCRA case. In *Havens*, the High Court addressed whether an African American tester-plaintiff sufficiently alleged injury-in-fact to assert a violation of the Fair

---

[10]     Although *Church* did not specifically discuss the importance of this time frame, this Court has, noting that timely disclosures are essential to protect consumers from being defrauded and irrespective of the validity of the debt. *See, e.g.*, *Camacho v. Bridgeport Fin. Inc.*, 430 F.3d 1078, 1082 (9th Cir. 2005).

Housing Act. *Id*. at 372. The defendant had falsely told her that it had no apartments available for rent on four occasions, having told a white tester that it did have apartments available for rent. *Id*. at 374. The only injury the tester-plaintiff alleged was the receipt of false information from the defendant, in violation of the Fair Housing Act ("FHA"). *Id*. The Supreme Court stated that the FHA "establishes an enforceable right to truthful information concerning the availability of housing" and that "[a] tester who has been the object of a misrepresentation made unlawful under [the FHA] has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the Act's provisions." *Id*. at 373-74. The Court explained that the fact the tester never intended to rent the apartment "does not negate the simple fact of injury within the meaning of [the FHA]." Thus, the Court held that the tester-plaintiff "alleged injury to her statutorily created right to truthful housing information" and satisfied Article III's injury-in-fact requirement. *Id*. Similarly, irrespective of whether Mr. Dutta lost a job or suffered similar economic harm, State Farm deprived him of FCRA-mandated information in the timeframe in which it would have made any different, *i.e.*, before State Farm took adverse action against him. How can a housing tester who never intended to rent an apartment have Article III standing to sue under the FHA, while a job applicant who lost a job because of a background check not have standing under the FCRA?

While State Farm attempts to distinguish the clear informational injury before the Court in *Public Citizen v. U.S. Dep't of Justice*, 491 U.S. 440 (1989), from its delay in providing Mr. Dutta with his consumer report and FCRA mandated information, that case in fact reinforces Mr. Dutta's standing. Indeed, the informational injury to him may be even more concrete than in *Public Citizen* or *Fed. Election Commission v. Akins*, 524 U.S. 11 (1998), because the pre-adverse action disclosure report directly bears upon the individual consumer (*i.e.*, Mr. Dutta) entitled to it – *it is information about that consumer*, not just information of general interest. State Farm deprived Mr. Dutta of this valuable information and of the opportunity to discuss the information in the report before he was disqualified for employment.

Simply providing the information at some point in time, or "disclosure merely for disclosure's sake," as State Farm puts it, does not satisfy an employer's FCRA duties, and violates a job applicant's substantive rights to review background check information before a decision is made.[11]

---

[11]     *Boorstein v. Men's Journal LLC,* No. 12-771, 2012 WL 2152815 (C.D. Cal. June 14, 2012), is not a FCRA case and is distinguishable. The law in question in that matter "only recognize[d] such 'informational injury' where the plaintiffs have requested information and have subsequently been denied it." *Id*. at *3. The plaintiff did not "allege that he sought STL disclosures from Defendant, or that he would have done so had the proper information been accessible." *Id*. at *2. The FCRA, in contrast, put the onus of compliance with section 1681b(b)(3) on State Farm, not Mr. Dutta.

**3.  In Addition to Providing a Right to Information, FCRA Section 1681b(b)(3) Also Provides a Privacy Right, the Violation of Which Alone Confers Standing**

As set forth above, section 1681b(b)(3) provides a substantive right to consumer report and FCRA information, independent of whether that information is accurate, a violation of which confers Article III standing due to the informational injury.  But even if it did not, Mr. Dutta would still have standing due to the invasion to his privacy.

In addition to its informational guarantee protections, FCRA section 1681b(b)(3) also creates protections for jobseekers' privacy interests.  *See Syed v. M-I, LLC*, *supra* (affirming the Article III standing of a plaintiff to sue under section 1681b(b)(2) on the basis of invasion of privacy).  The pre-adverse action notice required by section 1681b(b)(3) is a prerequisite to using a consumer report and, as such, is also a vital part of fulfilling the FCRA's purpose of protecting privacy.  The FCRA governs both when a report can be accessed and when it can be *used*, and both restrictions are intended to protect the privacy of the consumer. The pre-adverse action notice sets a precondition that must be fulfilled before there can be a "permissible use" of the consumer report for employment purposes. Absent compliance with the certification, the employer cannot *use* the consumer report for employment purposes. An employer who uses a consumer report without the required pre-adverse action has done so illegally. The privacy protections advanced

21

by section 1681b(b)(3) apply regardless of the content of the report. An employer must not be allowed to argue that it can misuse a consumer report because the report is accurate.

Mr. Dutta suffered the precise harm that Congress enacted section 1681b(b)(3) to protect against, and thus has Article III standing. *Spokeo*, 136 S. Ct. at 1549 (Congress has power to "identify intangible harms that meet minimum Article III requirements"); *see also Syed*, 853 F.3d at 499 (in context of violation of section 1681b(b)(2)(A) of the FCRA, explaining that "Congress has recognized the harm such violations cause, thereby articulating a chain[ ] of causation that will give rise to a case or controversy" (citation and internal quotation marks omitted)).

### 4.   State Farm's Reliance on *Dreher* is Misplaced

State Farm's discussion of the Fourth Circuit's decision in *Dreher v. Experian Information Solutions, Inc.* 856 F.3d 337 (4th Cir. 2017), is unhelpful. Appellee Brief at 47-50. In *Dreher*, the plaintiff applied for a security clearance with the federal government. 856 F.3d at 341-42. As a part of the application process, the federal government obtained a report, which included a delinquent credit card account. The plaintiff requested verification of the debt from the purported creditor and challenged the delinquent account to a consumer reporting agency, Experian.

In his complaint, Dreher alleged Experian did not comply with section 1681g(a)(2) when it failed to clearly and accurately disclose the sources of

information in his consumer's file at the time of the request, namely, the servicer of the account, pursuant to section § 1681g(a)(2). *Id*. at 345. Dreher did not allege the failure to disclose the source of the information in the Experian credit report prevented him from obtaining a security clearance. Indeed, his application for security clearance was *approved* by the federal government; that is, unlike Mr. Dutta, Dreher obtained what he wanted.

On appeal, Experian argued the plaintiff lacked Article III standing. The Fourth Circuit agreed with Experian after it applied the following three-part standing test: "Dreher must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id*. at 343 (citing *Spokeo*, 136 S.Ct. at 1547 and *Lujan*, 504 U.S. at 560-61). The Fourth Circuit recognized "intangible injuries can nevertheless be concrete" and noted a plaintiff may "satisfy the injury-in-fact requirement" for a procedural violation upon the showing of a "concrete harm." *Id.* (internal citations omitted).

The Fourth Circuit found Dreher had not articulated a concrete injury because he failed to show how viewing an incorrect name of the source of information "adversely affected his conduct in anyway." 856 F.3d at 347. Further, the Experian report contained sufficient information for Dreher to dispute the account. Dreher did, in fact, dispute the account on multiple occasions to the purported creditor and

23

Experian. 856 F.3d at 340-41. More importantly, Dreher's application for security clearance was *approved*.

Unlike in *Dreher*, State Farm completely deprived Mr. Dutta of all the information mandated by Congress "to ensure fair and accurate credit reporting," such as the pre-adverse notice, including the summary of his rights and a copy of the report before making its job decision. Importantly, the inaccurate and misleading information in Mr. Dutta's report prevented him from being hired by State Farm. Mr. Dutta was not given a copy of his FCRA rights or the report *before* State Farm rejected his employment application. Thus, Mr. Dutta suffered the precise injury-in-fact contemplated by the FCRA.

**5. At a Minimum, State Farm's Failure to Provide Mr. Dutta a Copy of His Consumer Report and FCRA Mandated Information Increased the Risk That He Would be Denied the Job**

Congress sought to minimize the risk of inaccurate information by requiring disclosure of reports to jobseekers before adverse action was taken and to learn of their FCRA rights. *See* 15 U.S.C. §1681b(b)(3); *Spokeo*, 136 S. Ct. at 1550 ("Congress plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk."

By failing to follow the FCRA, State Farm certainly increased the "risk of harm" to Mr. Dutta that he would be denied the job because he would have no opportunity to address concerns within his background check – further establishing

that his injuries were concrete. Specifically, State Farm increased the risk that: (1) it would base its decision upon the inaccurate information and mistakes outlined in his declaration and email, *supra*, before he could correct it or explain it; (2) it would ignore mitigating circumstances that could have caused it to revisit disqualification based on correctly disclosed credit information; and (3) that Mr. Dutta would not have discovered the inaccuracies and errors in time.

## C. Even If The District Court's Consideration Of The Beasley Declaration Was Procedurally Proper, It Erred In Finding That It Was Dispositive Of Mr. Dutta's Standing

As noted above, in light of the allegations in the record before the District Court, the Beasley declaration, is not dispositive of Mr. Dutta's standing. It merely serves to highlight the existence of factual disputes over the timing of the adverse action taken against Mr. Dutta in this case. At no point does Beasley contest the testimony of Mr. Dutta with respect to Ms. Thomas' call informing him that he was no longer eligible to work for State Farm on March 11, before he was ever provided with his background check or FCRA rights.

## III. CONCLUSION

For the reasons set forth in his opening brief and discussed above, Mr. Dutta respectfully requests that this Court reverse the order granting summary judgment to State Farm and remand this matter to the District Court.

Date: July 26, 2017                    Respectfully submitted,

*/s/ James A. Francis*
James A. Francis
David A. Searles
John Soumilas
Jordan M. Sartell
**FRANCIS & MAILMAN, P.C.**
Land Title Building
100 S. Broad Street, Suite 1902
Philadelphia, PA 19110
Tel: (215) 735-8600
Fax: (215) 940-8000
jfrancis@consumerlawfirm.com
dsearles@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
jsartell@consumerlawfirm.com

Deborah L. Raymond
**LAW OFFICES OF DEBORAH L. RAYMOND**
445 Marine View Ave., Suite 120
Del Mar, CA 92014
Tel: (858) 481-9559
draymondlaw@gmail.com

Robert S. Sola
**ROBERT S. SOLA, P.C.**
1500 SW First Avenue, Suite 800
Portland, OR 97225
Tel: (503) 295-6880
rssola@msn.com

Micah S. Adkins
**THE ADKINS FIRM, P.C.**
2 Perimeter Park South, Suite 405E
Birmingham, AL 35243
Tel: (205) 206-6718
MicahAdkins@ItsYourCreditReport.com

*Counsel for Plaintiff-Appellant*

26

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I, James A. Francis, hereby certify pursuant to Fed. R. App. P. 25(d) that, on

July 26, 2017, the foregoing Reply Brief of Plaintiff-Appellant Bobby S. Dutta was

filed through the CM/ECF system and served electronically on parties in the case.

*/s/ James A. Francis*
James A. Francis

**Form 8.** **Certificate of Compliance Pursuant to 9th Circuit Rules 28.1-1(f), 29-2(c)(2) and (3), 32-1, 32-2 or 32-4 for Case Number** 16-17216

Note: This form must be signed by the attorney or unrepresented litigant *and attached to the end of the brief.*

I certify that (*check appropriate option*):

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 28.1-1.
The brief is _____ words or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☒ This brief complies with the length limits permitted by Ninth Circuit Rule 32-1.
The brief is 6,251 words or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 32-2(b).
The brief is _____ words or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable, and is filed by (1) ☐ separately represented parties; (2) ☐ a party or parties filing a single brief in response to multiple briefs; or (3) ☐ a party or parties filing a single brief in response to a longer joint brief filed under Rule 32-2(b). The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the longer length limit authorized by court order dated _____
The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6). The brief is _____ words or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable.

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 32-2 (a) and is _____ words or _____ pages, excluding the portions exempted by Fed. R. App. P. 32 (f), if applicable. The brief's type size and type face comply with Fed. R .App. P. 32(a)(5) and (6).

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 29-2 (c)(2) or (3) and is _____ words or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits set forth at Ninth Circuit Rule 32-4.
The brief is _____ words or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

Signature of Attorney or Unrepresented Litigant: s/ James A. Francis

Date 7/26/2017

("s/" plus typed name is acceptable for electronically-filed documents)